361 So.2d 144 (1978)
Ray CARROLL, Dolores Savarese, and Lilyan Schlesser, Appellants,
v.
The STATE of Florida, Appellee.
No. 49342.
Supreme Court of Florida.
July 20, 1978.
*145 Max B. Kogen, Miami, for appellants.
Robert L. Shevin, Atty. Gen., and Sidney M. Pertnoy, Asst. Atty. Gen., Miami, for appellee.
ADKINS, Justice.
This is a direct appeal from the Circuit Court of Dade County which held that Section 849.093, Florida Statutes (1975), (the bingo law) was constitutional. We have jurisdiction.
Appellants, hereinafter referred to as defendants, were charged in an 18-count indictment alleging various violations of the lottery laws. By motion to dismiss defendant attacked the constitutionality of Section 849.093, Florida Statutes (1975). The motion was denied and the court directly passed upon the constitutionality of the statute.
After a non-jury trial, the defendants were found and adjudged guilty. Defendant Savarese was found guilty under one count of the indictment and sentenced to pay a fine of $1,000. Defendants Carroll and Schlesser were convicted under several counts of the indictment and by general sentence, Carroll was fined $1,500, and Schlesser was fined $900.
The statute under attack is constitutional. Statutes are presumed to be constitutional until the contrary is shown; and it is only when they manifestly infringe some provision of the Constitution that they can be declared void for that reason. Greater Loretta Improvement Association v. State ex rel. Boone, 234 So.2d 665, 669 (Fla. 1970). As we stated:
When the Legislature has once construed the Constitution, for the courts then to place a different construction upon it means that they must declare void the action of the Legislature. It is no small matter for one branch of the government to annul the formal exercise by another of power committed to the latter. The courts should not and must not annul, as contrary to the Constitution, a statute passed by the Legislature, unless it can be said of the statute that it positively and certainly is opposed to the Constitution. This is elementary. (Greater Loretta Improvement Association v. State ex rel. Boone at p. 670)
The defendants contend that the exclusionary privileges granted to non-profit and veterans' organizations by Section 849.093 constitute class legislation that is discriminatory, arbitrary, and without any reasonable relationship to the police power of this state. To support this contention, defendants have relied solely on the 1953 Indiana Supreme Court case of Fairchild v. Schanke, 232 Ind. 480, 113 N.E.2d 159 (1953).
The statute which the court was confronted with in Fairchild v. Schanke, supra, was titled "An Act concerning the crime of gambling, and providing penalties therefor." The Indiana Court found that the exception of bona fide religious, patriotic, charitable, or fraternal clubs from this gambling statute rendered the law unconstitutional. The Court held that the anti-gambling enactment was not based upon a substantial distinction with reference to the subject matter of the act.
In contrast to the Florida Statute now under consideration, the Indiana law permitted religious, patriotic, charitable, and fraternal clubs to engage in all forms of gambling. Section 849.093, Florida Statutes (1975) permits non-profit and veterans' organizations to play bingo and guest games only. The difference between the exclusionary privileges granted the Indiana organizations and the Florida organizations is therefore abundantly clear.
*146 In holding the statute unconstitutional, the court in Fairchild v. Schanke, supra, further observed that the exclusion created by the statute didn't embrace all within the class to which it was related. As the court stated:
In determining the construction of the act here in question this court will take judicial notice of the fact that there are many social clubs and service clubs in Indiana which do not come within the excluded class in the act, but which are by their nature related to those excluded and are similarly situated as to organization and general purpose. These clubs are subject to the act. They cannot, with immunity, operate gambling devices or conduct lotteries or gambling enterprises at any time or for any purpose, while the excluded clubs are exempt from the provisions of the act, thereby extending to them privileges and immunities which, upon the same terms, are not granted to other clubs and individuals similarly situated. The exclusion does not embrace all within the class to which it is related. Fairchild v. Schanke, at pps. 164-165.
Defendants assert that this is equally true in the case at bar. It is not.
Subsection (1) of Section 849.093, Florida Statutes (1975) permits non-profit and veterans' organizations which have been in existence for three years and which are engaged in charitable, civic, community, benevolent, religious or scholastic works or other similar activities to conduct bingo or guest games provided the proceeds are donated to their respective endeavors. Subsection (2) of Section 849.093, Florida Statutes (1975) permits any other non-profit organization, not engaged in efforts of the type set out in subsection one, to conduct bingo or guest games, provided all of the proceeds are returned to the players in the form of prizes. Taken together, subsections (1) and (2) permit non-profit or veterans' organizations to conduct bingo or guest games so long as the purpose is either to raise money for certain broad categories of social welfare or for the pure recreation and enjoyment of their members. In contrast, then, to the Indiana statute, the Florida law is broad enough to cover any group not organized for profit. The many social clubs and service clubs which did not come within the excluded class in the Indiana Act are all encompassed within the excluded class in the Florida statute. The exclusion does embrace all within the class to which it is related.
Defendants contend that Section 849.093, Florida Statutes (1975) is without any reasonable relationship to the police power of the state to regulate the morals, public health, or welfare of the citizens of this state. This argument is without merit.
Police power is the sovereign right of the state to enact laws for the protection of lives, health, morals, comfort, and general welfare. State ex rel. Municipal Bond and Inv. Co. Inc. v. Knott, 114 Fla. 120, 154 So. 143, 145 (1934). It is generally accepted that the state is the primary judge of, and may by statute or other appropriate means, regulate any enterprise, trade, occupation, or profession if necessary to protect the public health, welfare, or morals, and a great deal of discretion is vested in the legislature to determine public interest and measures for its protection. Burnsed v. Seaboard Coastline Railroad Company, 290 So.2d 13, 18 (Fla. 1974). When a particular attempted exercise of the police power by a state, or under its authority, passes the bounds of reason and assumes the character of a merely arbitrary fiat, it will be stricken down and declared void. Burritt v. Harris, 166 So.2d 168, 172, 173 (1st DCA Fla. 1964). However, every reasonable doubt must be indulged in favor of the act. If it can be rationally interpreted to harmonize with the Constitution, it is the duty of the court to adopt that construction and sustain the act. Holley v. Adams, 238 So.2d 401, 404 (Fla. 1970).
The Constitution of Florida is a limitation of power, and while the legislature cannot legalize any gambling device that would in effect amount to a lottery, it has inherent power to regulate or to prohibit any and all other forms of gambling. Lee v. City of Miami, 121 Fla. 93, 163 So. 486, *147 490 (1935). In exercising this power to regulate, the legislature, in its wisdom, has seen fit to permit bingo as a form of recreation, and at the same time, has allowed worthy organizations to receive the benefits. Greater Loretta Improvement Association v. State ex rel. Boone, supra.
Recognizing the vice of lotteries, which infests the whole community, and the mischief or nuisance of gambling generally, the legislature has written into Section 849.093, Florida Statutes (1975) stringent limitations against abuse. For example, the authorized bingo may be conducted only two nights a week and the prizes are limited to $25.00 each, except that one grand prize is allowable in the amount of $100.00 per night. Perlman v. State, 269 So.2d 385, 387 (4th DCA Fla. 1972); Section 849.093(4)(5), Florida Statutes (1975).
The general thrust of the classification allowing non-profit and veterans' organizations to conduct bingo and guest games, is that in addition to providing a source of recreation, relaxation, and social intercourse, the proceeds are donated to charitable, civic, community, benevolent, religious, scholastic, or other similar endeavors. This is for the general welfare and removes bingo profits from the purview of organized gambling.
The discretion of the legislature when exercised for the public welfare in selecting the subjects of police regulations and in determining the nature and extent of such regulation is limited only by the requirements of fundamental law that the regulations shall not invade private rights secured by the Constitution. Everglades Sugar and Land Co. v. Bryan, 81 Fla. 75, 87 So. 68, 70 (1921). There is no constitutional right to conduct a gambling business, and therefore Section 849.093, Florida Statutes (1975) does not "invade the private rights secured by the Constitution."
The motivating forces behind granting exclusionary privileges to non-profit and veterans' organizations by Section 849.093, Florida Statutes (1975) and granting tax exemptions to qualified non-profit organizations by Congress in the Internal Revenue Act are identical; namely the promotion of participation and support for charitable, civic, community, benevolent, religious, scholastic or other similar activities. Statutes of other jurisdictions, exempting legalized gambling schemes for the benefit of public, religious, or charitable purposes, from the operation of statutes directed against gambling in general have been sustained as within the power of state legislatures. See e.g. Commonwealth of Massachusetts v. Thomas A. O'Connell, 293 Mass. 459, 200 N.E. 269, 103 A.L.R. 872, 875 (Mass. 1936).
Section 849.093, Florida Statutes (1975) does not violate the due process and equal protection clauses of either the Florida or the United States Constitutions.
The trial court did not commit error in refusing to grant defendants' motions for judgments of acquittal. The evidence is sufficient to sustain the findings and judgments of the trial court, so the judgments are affirmed.
The trial court imposed general sentences upon defendants Carroll and Schlesser. Each defendant was convicted of three separate crimes. A general sentence, of course, occurs when the trial court imposes only one sentence after a defendant has been convicted of several offenses. It is distinguished from consecutive sentences, where one sentence succeeds another, or concurrent sentences, where several sentences are served simultaneously. General sentences are no longer proper and may not be imposed by any trial court. Dorfman v. State, 351 So.2d 954 (Fla. 1977). (Dorfman was decided subsequent to the imposition of the sentences in the case sub judice.)
The judgments of the lower court are affirmed. The sentences imposed upon defendant Carroll and defendant Schlesser are vacated and the cause is remanded to the trial court for imposition of an appropriate sentence.
It is so ordered.
ENGLAND, C.J., and BOYD, OVERTON and HATCHETT, JJ., concur.
SUNDBERG, J., dissents.