BOARDMAN, Judge.
Stephen Paskind, et al., defendants below, filed this interlocutory appeal from the order of the trial court granting a temporary injunction enjoining them from operating bingo games at 3908 Britton Plaza in Tampa. We affirm.
The state on the relation of State Attorney E. J. Salcines filed a petition for a temporary and permanent injunction against appellants, alleging that they were using the Britton Plaza location for the operation of bingo games in violation of sections 849.09 and 849.093, Florida Statutes (1979), and were therefore maintaining a nuisance under section 832.05, Florida Statutes (1979), and seeking an order declaring the Britton Plaza Bingo Hall a nuisance, a temporary restraining order abating the nuisance, and a permanent injunction. After hearing, the trial court on February 7, 1980, granted a temporary injunction until further order of the court. This interlocutory appeal followed timely.
The facts of this case are that in December, 1978, appellant Paskind, as agent for Rental Halls of Tampa, Inc. (Rental Halls), a Florida corporation for profit, entered into a lease with Charles J. Bickmer, as trustee for the Britton Plaza shopping center. The subject of this lease was a storeroom with approximately 12,000 square feet of space on the 3900 block of South Dale Mabry, in Tampa. This space was to be used by Rental Halls as a meeting and bingo hall for a term of ten years. Rental Halls agreed to make monthly rental payments of $4000.
On September 8, 1979, Rental Halls entered into a sublease with the following nonprofit Florida corporations: Tampa Wheels, Inc., Sunspokes Wheelchair Sports and Recreation Association, Inc., Sunshine Wheelchair Athletic Association, Inc., and Tampa Bay Suncoasters, Inc.
The sublease provided that the room could be used as a meeting and bingo hall; that Rental Halls would provide all equipment and supplies necessary to the conduct of bingo games; and that Rental Halls would advance to the four nonprofit subles-sees monies for merchandise, gifts, the rental of buses or any other transportation costs, and motel rooms for out-of-town guests. Rental Halls would thereafter be reimbursed by the sublessees for all such monies advanced. In return, the sublessees agreed to make rental payments to Rental Halls in the amount of $6020 per week.
Thereafter, each of the nonprofit subles-sees began sponsoring bingo games at Brit-ton Plaza. They shared the same space, each sponsoring bingo games on no more than two prearranged days of the week, with matinees taking place on certain days of the week, all allegedly under the sponsorship of the four nonprofit sublessees.
We agree, in essence, with the trial court’s ruling and in part with the reasoning upon which it was based. Section 849.-093 excepts bingo games from the operation of section 849.09, which generally proscribes lotteries, but the playing of bingo games for money or any other thing of value is permitted only if conducted in conformity with section 849.093.
Among the provisions of section 849.093 is the following:
(9) Bingo or guest games shall be held only on the following premises:
(a) Property owned by the nonprofit organization;
(b) Property owned by the charity or organization that will benefit by the proceeds;
(c) Property leased full time for a period of not less than 1 year by the nonprofit organization or by the charity or organization that will benefit by the proceeds;
(d) Property owned by and leased from another nonprofit organization qualified under this section; or
(e) Property owned by a municipality or a county when the governing authority has, by appropriate ordinance of resolution, specifically authorized the use of such property for the conduct of such games.
Appellants obviously do not meet the conditions of subsections (9)(a), (b), (d), or (e); they make no contention otherwise. The *1200 issue before us, then, is the correctness of the trial court’s interpretation of subsection (9)(c).
We hold that the trial court was correct in concluding that appellants were in violation of section 849.093(9)(c). That subsection clearly states that the property must be leased full time by the qualified, nonprofit organization or charity that will benefit by the proceeds. We think it is significant that this subsection makes reference to a charity or organization only in the singular form, although these terms are used in the plural form in two other subsections of section 849.093.
One of the fundamental rules of statutory construction is that the legislative intent must be ascertained and effectuated and that intent must be gathered from consideration of the statute as a whole rather than from any one part thereof. State ex rel. Register v. Safer, 368 So.2d 620 (Fla. 1st DCA 1979). When the bingo exception is read as a whole, it is clear that the legislature never intended the bingo exception to include the operation of a large-scale, commercial bingo operation such as the one we now consider.
There can be no doubt that the legislature intended that the nonprofit organizations that run these bingo games be the primary beneficiary of the proceeds of these games. Section 849.093(2) states that the entire proceeds, less actual business expenses, shall be donated by such organizations to certain specified, worthy endeavors. See Carroll v. State, 361 So.2d 144 (Fla.1978). The legislature inserted the full-time lease limitation in this subsection to prevent the diversion of proceeds to profit-making entities through the conduit of rents and expenses.
This intent can be easily ascertained by examination of the remaining subsections, all of which require that the actual owner of the property be a nonprofit organization, to wit: the organization which will directly benefit from the proceeds of the bingo activities (subsections (9)(a) and (b)), another nonprofit organization qualified under section 849.093 (subsection (9)(d)), or a county or municipality (subsection (9)(e)).
It does appear, as the trial court found, that appellant Rental Halls is both the true operator and chief financial beneficiary of the bingo games at Britton Plaza. The disparity in the rental obligations of Rental Halls ($4000 per month) and the nonprofit sublessees ($6020 per week) strongly indicates a violation of the legislative intent. However, there being no evidence in the record concerning Rental Halls’ net profits, we reach no conclusion on this issue. While the evidence does not support the trial court’s finding, such a finding was not necessary to support the trial court’s order, and we do not rely on it in deciding this case. This court’s opinion is based solely on our construction of the statute in question.
Finally, we do not agree with the trial court’s ruling that the mere fact that bingo games are conducted more than two days a week at the same location is necessarily a violation of section 849.093(4), which provides: “The number of days during which such organizations as are authorized hereunder may conduct bingo or guest games per week shall not exceed two.” As we read section 849.093(4) and (9), bingo games could be held more than two nights a week at the same location under a setup similar to that involved here as long as no single organization conducted bingo games more than two nights a week-but only if the actual owner of the property were a qualified nonprofit organization pursuant to subsection (9)(d). This, of course, is of no help to appellants, since the owner of Brit-ton Plaza is not such a nonprofit organization. See State ex rel. Reno v. Lusardi, 362 So.2d 1067 (Fla. 11th Circuit, 1978), aff’d sub nom. Community Art Alliance, Inc. v. Reno, 372 So.2d 1169 (Fla. 3d DCA 1979). In that case a profit organization sublet certain premises to a charitable organization. Subsequently, the charitable organization sublet the same premises to other charitable organizations for two nights per week each. The circuit court ruled that the sublease arrangement violated the full-time lease provision of the bingo exception, *1201 declared the bingo hall a nuisance, and issued a temporary restraining order abating the nuisance.
Accordingly, the temporary injunction issued by the trial court is AFFIRMED.
SCHEB, C. J., and HOBSON, J., concur.