BARKETT, Justice.
We have for review In re Forfeiture of 1969 Piper Navajo, 570 So.2d 1357 (Fla. 4th DCA 1990), in which the district court declared section 330.40 of the Florida Stat *234 utes (1987) unconstitutional. We affirm the decision of the district court.[1]
On February 8, 1988, Broward County sheriffs deputies seized a 1969 Piper Navajo aircraft parked- at a private field. The sheriff alleged that the aircraft was equipped with extra fuel tanks which did not conform to Federal Aviation Administration (FAA) regulations,[2] and which were not approved by the FAA, and therefore the aircraft was subject to forfeiture pursuant to section 330.40 of the Florida Statutes (1987). A petition for forfeiture of the aircraft was timely filed pursuant to sections 330.40 and 932.703(1) of the Florida Statutes (1987). Appellee, Anacaola Trading (Anacaola), the owner of the aircraft, sought dismissal of the petition on the basis that, among other reasons, section 330.40 violated due process of law.
The trial court dismissed the petition for forfeiture and found the forfeiture provision contained in section 330.40 to be unconstitutional. The trial court assumed that the statute’s main purpose was the seizure and forfeiture of aircraft employed in illegal drug trafficking. The trial court reasoned, however, that “[i]t is perfectly plausible for an airplane to be equipped with extra fuel tanks for purposes other than smuggling. Therefore, the statute brings within its ambit otherwise innocent activities.” In re Forfeiture of 1969 Piper Navajo, 570 So.2d at 1359. Accordingly, the court found that section 330.40, “as it relates to the ‘Florida Contraband Forfeiture Act,’ ” was not rationally related to any legislative objective and thus violated substantive due process of law. The district court affirmed and adopted the trial judge’s order in substantial part.
Section 330.40, Florida Statutes (1989), provides in full:
In the interests of the public welfare, it is unlawful for any person, firm, corporation, or association to install, maintain, or possess any aircraft which has been equipped with, or had installed in its wings or fuselage, fuel tanks, bladders, drums, or other containers which will hold fuel if such fuel tanks, bladders, drums, or other containers do not conform to federal aviation regulations or have not been approved by the Federal Aviation Administration by inspection or special permit. This provision also includes any pipes, hoses, or auxiliary pumps which when present in the aircraft could be used to introduce fuel into the primary fuel system of the aircraft from such tanks, bladders, drums, or containers. Any person who violates any provision of this section is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. Any aircraft in violation of this section shall be considered contraband, and said aircraft may be seized as contraband by a law enforcement agency and shall be subject to forfeiture pursuant to ss. 932.701-932.704.
(Emphasis added.)
Thus, under section 330.40, originally enacted in 1983, the possession of Anacaola’s aircraft, if it had unapproved fuel tanks,[3] was a felony of the third degree. § 330.40, Fla.Stat. (1983). In 1987, the legislature amended section 330.40 to expressly authorize forfeiture of such nonconforming aircraft [4] as contraband per se under the Flor *235 ida Contraband Forfeiture Act.[5] Ch. ST-243, § 22, Laws of Fla.
In considering whether a statute violates substantive due process, the basic test is whether the state can justify the infringement of its legislative activity upon personal rights and liberties. The general rule is that when the legislature enacts penal statutes, such as section 330.40, under the authority of the state’s police power, the legislature’s power is confined to those acts which reasonably may be construed as expedient for protection of the public health, safety, and welfare. Art. I, § 9, Fla. Const.; State v. Saiez, 489 So.2d 1125, 1127 (Fla.1986); see Nebbia v. New York, 291 U.S. 502, 523, 54 S.Ct. 505, 509-10, 78 L.Ed. 940 (1934); Hamilton v. State, 366 So.2d 8, 10 (Fla.1978); Carroll v. State, 361 So.2d 144, 146 (Fla.1978); Newman v. Carson, 280 So.2d 426, 428 (Fla.1973); State v. Leone, 118 So.2d 781, 784 (Fla.1960).
In addition, due process requires that the law shall not be unreasonable, arbitrary, or capricious, and therefore courts must determine that the means selected by the legislature bear a reasonable and substantial relation to the purpose sought to be attained. Art. I, § 9, Fla. Const.; Saiez, 489 So.2d at 1128; see Nebbia, 291 U.S. at 510-11, 54 S.Ct. 505; Hamilton, 366 So.2d at 10; Carroll, 361 So.2d at 146; Newman, 280 So.2d at 429; Leone, 118 So.2d at 784-785.
Anacaola argues that the trial judge correctly found that there was no reasonable relation between drug smuggling and expanded fuel tanks. If the statute simply prohibited the possession of extra fuel capacity, Anacaola’s position would have merit.[6] However, the legislature has not prohibited merely the possession of extra fuel capacity. Section 330.40 makes it “unlawful for any person ... to install, maintain, or possess any aircraft which has been equipped with ... fuel tanks ... which ... do not conform to federal aviation regulations.” § 330.40, Fla.Stat. (1989) (emphasis added). As noted above, the state, through the exercise of its police power, has the authority to pass laws to preserve the public safety. E.g. Saiez. It is primarily the responsibility of the FAA, as a division of the Department of Transportation, to promulgate rules, regulations, and standards to promote flight safety in air commerce. See 49 U.S.C.App. § 1421(a) (1988); Landy v. Federal Aviation Admin., 635 F.2d 143, 148 (2d Cir.1980), cert. denied, 464 U.S. 895, 104 S.Ct. 243, 78 L.Ed.2d 232 (1983); 14 C.F.R. §§ 1-199 (1991). Thus, we find that assuring conformity with FAA regulations for the purpose of public safety is within the legislative province.
Having decided that the state can infringe upon an individual’s property rights by regulating for the public safety, we must then decide whether the means chosen by the legislature (forfeiture) are narrowly tailored to achieve the state’s objective (aircraft safety) through the least restrictive alternative. See Department of Law Enforcement v. Real Property, 588 So.2d 957, 962-64 (Fla.1991). As Justice O’Connell wrote for the majority in State v. Leone:
While it is true that the constitutional guarantee of individual rights does not prevent the exercise of the police power so as to interfere with such rights, it does operate to limit the exercise of that power.
The limitation is such that the police power may only be used so as to interfere with the God-given and constitutionally protected right of the individual to pursue a lawful business, or so as to discriminate against an individual or class, where the public interest demands *236 that the rights of the individual, or class, give way in favor of the public generally.
To exercise this power to the detriment of the individual or class, it must first be clear that the purpose to be served is not merely desirable but one which will so benefit the public as to justify interference with or destruction of private rights.
Then, the police power may be used only against those individual rights which are reasonably related to the accomplishment of the desired end which will serve the public interest. This means that the interference with or sacrifice of the private rights must be necessary, i.e. must be essential, to the reasonable accomplishment of the desired goal. Such interference or sacrifice of private rights can never be justified nor sanctioned merely to make it more convenient or easier for the State to achieve the desired end. This is so because one, if not the principal, reason for the existence of a democratic form of government is to guarantee to the individual freedom of action in those pursuits which do not harm his neighbors. If there is a choice of ways in which government can reasonably attain a valid goal necessary to the public interest, it must elect that course which will infringe the least on the rights of the individual.
118 So.2d 781, 784-85 (Fla.1960) (latter emphasis added).
In this case the method chosen by the legislature to prohibit operation of aircraft with nonconforming fuel tanks is not sufficiently narrowly tailored to the objective of flight safety in air commerce to survive constitutional scrutiny. This is particularly so because property rights are protected by a number of provisions in the Florida Constitution. Article I, section 2 provides that “[a]ll natural persons are equal before the law and have inalienable rights, among which are the right ... to acquire, possess and protect property_” Article I, section 9 provides that “[n]o person shall be deprived of life, liberty or property without due process of law....” Article I, section 23 provides that “[ejvery natural person has the right to be let alone and free from governmental intrusion into his private life....” As we have previously noted, “[tjhese property rights are woven into the fabric of Florida history.” Shriners Hosp. v. Zrillic, 563 So.2d 64, 67 (Fla.1990). The main thrust of these protections is that, so long as the public welfare is protected, every person in Florida enjoys the right to possess property free from unreasonable government interference. See id.; Town of Bay Harbor Islands v. Schlapik, 57 So.2d 855, 857 (Fla.1952).
While the state undoubtedly has a substantial interest in promoting air safety, the legislature does not have the authority to confiscate airplanes simply because they possess additional fuel capacity. The central concern of substantive due process is to limit the means employed by the state to the least restrictive way of achieving its permissible ends.
We note that in authorizing forfeiture under section 330.40, the legislature has even exceeded the awesome authority exercised in the Florida Contraband Forfeiture Act. On its face, section 330.40 automatically converts every aircraft with nonconforming fuel tanks, whether airworthy or not, and whether involved in criminal activity or not, into contraband subject to forfeiture under the forfeiture act. Here, as we have said, Anacaola’s aircraft was parked; the sheriff did not allege that the airplane had been, was being, or was about to be used in the commission of a felony as required for forfeiture under the forfeiture act. As the trial court noted, the legislature has available many other less restrictive means to assure compliance with FAA regulations. And in the event that an aircraft is being used as a criminal instrumentality, the forfeiture act already provides for forfeiture of such aircraft.
Accordingly, we hold the forfeiture provision contained in section 330.40, Florida Statutes (1987), unconstitutional under due process of law as guaranteed by article I, section 9 of the Florida Constitution. The decision of the district court is affirmed.
It is so ordered.
*237 SHAW, C.J. and OVERTON, MCDONALD, GRIMES, KOGAN and HARDING, JJ., concur.

. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution.

. The Federal Aviation Regulations are found in volume 14 of the Code of Federal Regulations.

. According to Anacaola, in 1984 the airplane was converted by an FAA-approved repair station to a so-called "Panther Model” to enable the plane to accommodate auxiliary fuel tanks. The appellee attached to its motion a 1987 inspection record and the affidavit of the repair station owner that the aircraft conformed to FAA regulations.

.The 1987 amendment was passed as part of the Crime Prevention and Control Act which governs the use, regulation, distribution, and prohibition of controlled substances. Ch. 87-243, § 4, Laws of Fla. The amendment was prompted by case law which held that forfeiture was not an available penalty for violations of section 330.40. See City of Indian Harbour Beach v. Damron, 465 So.2d 1382, 1383 (Fla. 5th DCA 1985); Staff of Florida Senate Comm, on Judiciary-Criminal, CS for HB 1467 (1987), Staff Analysis (revised May 25, 1987).

. §§ 932.701-932.704, Fla.Stat. (1987). We recently upheld the constitutionality of the Florida Contraband Forfeiture Act, provided its provisions are applied consistent with procedural due process of law. Department of Law Enforcement v. Real Property, 588 So.2d 957 (Fla.1991).

. Clearly, the possession of extra fuel capacity would not be the exclusive domain of drug smugglers.